# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

IN RE:

TAYLOR BEAN & WHITAKER MORTGAGE CORPORTATION

Case No. 3:09-bk-07047

_____/

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND LONDON MARKET INSURANCE COMPANIES THAT SUBSCRIBE TO CERTIFICATE NO. B0621PTAY00208, CERTIFICATE NO. B0621PTAY00308, CERTIFICATE NO. SUA 2896, and/or CERTIFICATE NO. B0621PTAY00207001,

Case No.

      Plaintiffs,

Adversary Proceeding

vs.

TAYLOR BEAN & WHITAKER MORTGAGE CORPORTATION, FEDERAL HOME LOAN MORTGAGE CORPORATION, GOVERNMENT NATIONAL MORTGAGE ASSOCIATION and SOVEREIGN BANK,

      Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Certain Underwriters of Lloyd's, London and London Market Insurance Companies that subscribe to Certificate No. B0621PTAY00208, Certificate No. B0621PTAY00308, Certificate No. SUA 2896 and/or Certificate No. B0621PTAY00207001 (collectively "Underwriters") assert the following claims for declaratory judgment against Taylor Bean & Whitaker Mortgage Corporation ("TBW"),

Federal Home Loan Mortgage Corporation ("Freddie Mac"), Government National Mortgage Association ("GINNIE MAE") and Sovereign Bank:

## PARTIES AND JURISDICTION

1. On August 24, 2009, TBW filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Plaintiffs request a declaration under four insurance policies:

    a. Mortgage Bankers Bond bearing Certificate No. SUA 2896 ("2007 Primary Bond"),

    b. Excess Mortgage Brokers Bond bearing Certificate No. B0621PTAY00207001 ("2007 Excess Bond"),

    c. Mortgage Bankers Bond bearing Certificate No. B0621PTAY00308 ("2008 Primary Bond"), and

    d. Excess Mortgage Brokers Bond bearing Certificate No. B0621PTAY00208 ("2008 Excess Bond").

The 2007 Primary Bond, 2007 Excess Bond, 2008 Primary Bond and 2008 Excess Bond are referred to collectively as the "Bonds."

3. Those Underwriters that subscribe to the 2007 Primary Bond ("2007 Primary Underwriters") are Wurttembergische Versicherung Aktiengesellschaft ("Wurtt") and the members of Lloyd's Syndicate No. 3000, Syndicate No. 1084, Syndicate No. 4444 and Syndicate No. 1400.

4. Those Underwriters that subscribe to the 2007 Excess Bond ("2007 Excess Underwriters") are Wurtt and members of Lloyd's Syndicate No. 3000, Syndicate No. 2000, Syndicate No. 4444, and Syndicate No. 2987.

5. Those Underwriters that subscribe to the 2008 Primary Bond ("2008 Primary Underwriters") are members of Lloyd's Syndicate No. 3000, Syndicate No. 1084, Syndicate No. 4444, Syndicate No. 1274 and Syndicate No. 1400.

6. Those Underwriters that subscribe to the 2008 Excess Bond ("2008 Excess Underwriters") are members of Lloyd's Syndicate No. 3000, Syndicate No. 1084, Syndicate No. 4444, Syndicate No. 1274, Syndicate No. 1886 and Syndicate No. 1400.

7. Freddie Mac, Ginnie Mae and Sovereign Bank have asserted a claim for loss allegedly covered by the 2008 Bonds and asserted a right to pursue a claim thereunder.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) because this case is related to a case filed under Title 11. Because a resolution of this case could conceivably have an effect on TBW's claimed assets, a related matter is presented, and this case will serve the purposes of the Bankruptcy Code and § 1334(b).

9. Venue over this matter is proper in this district pursuant to 28 U.S.C. § 1409.

10. Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between plaintiffs and defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

## FACTUAL ALLEGATIONS
## THE 2007 PRIMARY AND EXCESS BONDS

11. Prior to April 2, 2007, for the purpose of renewing certain mortgage bankers bond and excess mortgage bankers bond coverage, TBW completed a Mortgage

Bankers/Professional Liability Application and a Mortgage Bankers Bond Supplemental Application (collectively "2007 Applications"). A true and correct copy of the body of the 2007 Applications is attached hereto as **Exhibit A**.

12. The 2007 Applications requested information required by Underwriters to evaluate the risk of issuing to TBW mortgage bankers bond and excess mortgage bankers bond coverage commencing June 20, 2007.

13. In the 2007 Applications, in Paragraph 29.a. and 29.b., TBW answered "no" to the following inquiries:

> Does the applicant, or any predecessor in business or any of the past or present partners, Officers, Directors, or employees have any reasonable basis:
>
> a. to believe that there has been a breach of professional duty?
>
> b. to believe that the applicant or any predecessor in business or any of the past or present partners, Officers, Directors, or employees are aware of any circumstances, incidents or situations during the past five years which may result in claims being made against the applicant, any of the past or present partners, Officers, Directors or employees or former employees of the applicant?

TBW agreed in the 2007 Applications that "If there is knowledge of any such fact, circumstance or situation, any claim or action subsequently emanating therefrom shall be excluded from coverage under the proposed insurance."

14. In the 2007 Applications, in Paragraph 35.A, TBW answered "no" to the inquiry:

> A. During the past 5 years has the company discovered any loss, or received notice of any claim or potential claim involving any of the following:
>
> Employee Dishonesty/Fidelity?
>
>                                                               \* \* \*

15. The 2007 Applications, in Paragraph 35.C., asked TBW to disclose:

> C. Has the company any knowledge or information after full inquiry of any facts, circumstances or events which could give rise to a Mortgage Bankers Bond loss (or claim being made against them)?

In response to this inquiry, TBW disclosed only that "a notice of potential claim has been filed with the insurance company February 2007" (a reference to a notice of claim arising from certain mortgage loans approved by an employee in Utah).

16. In reliance upon, among other things, the truth, completeness and accuracy of the 2007 Applications and the information submitted in connection therewith, the 2007 Primary Bond Underwriters, severally, subscribed to and issued the 2007 Primary Bond to TBW on June 20, 2007. A true and correct copy of the 2007 Primary Bond is attached hereto as **Exhibit B**.

17. In reliance upon, among other things, the truth, completeness, and accuracy of the 2007 Applications and the information submitted in connection therewith, the 2007 Excess Bond Underwriters, severally, subscribed to and issued the 2007 Excess Bond to TBW. A true and correct copy of that 2007 Excess Bond is attached hereto as **Exhibit C**. The 2007 Excess Bond states that "[e]xcept as otherwise provided herein, this policy is subject to the same terms, exclusions, conditions and definitions as the policy of the primary insurers."

**THE 2008 PRIMARY AND EXCESS BONDS**

18. For the purpose of renewing the 2007 Primary Bond and 2007 Excess Bond, TBW completed a Mortgage Bankers/Professional Liability Application and a Mortgage Bankers Bond Supplemental Application dated April 2, 2008 (collectively

"2008 Applications"). A true and correct copy of the 2008 Applications is attached hereto as **Exhibit D**.

19. The 2008 Applications requested information required by Underwriters to evaluate the risk of issuing to TBW mortgage bankers bond and excess mortgage bankers bond coverage.

20. In the 2008 Applications, in Paragraph 40.a. and 40.b., TBW answered "no" to the following inquiries:

> Does the applicant, or any predecessor in business or any of the past or present partners, Officers, Directors, or employees have any reasonable basis:
>
> a. to believe that there has been a breach of professional duty?
>
> b. to believe that the applicant or any predecessor in business or any of the past or present partners, Officers, Directors, or employees are aware of any circumstances, incidents or situations during the past five years which may result in claims being made against the applicant, any of the past or present partners, Officers, Directors or employees or former employees of the applicant?

TBW agreed in the 2008 Applications that "If there is knowledge of any such fact, circumstance or situation, any claim or action subsequently emanating therefrom shall be excluded from coverage under the proposed insurance."

21. In the 2008 Applications, in Paragraph 35, TBW answered "yes" to the following inquiry:

> A. During the past 5 years has the company discovered any loss, or received notice of any claim or potential claim involving any of the following: Employee Dishonesty/Fidelity?
> \* \* \*
> C. Has the company any knowledge or information after full inquiry of any facts, circumstances or events which could give rise to a Mortgage Bankers Bond loss (or claim being made against them)?

22. Underwriters thereafter asked for an explanation of TBW's affirmative answer to Paragraph 35 of the 2008 Applications. In response to that inquiry, TBW indicated that the circumstances disclosed in the 2008 Application could give rise to a claim under the proposed insurance. A true and correct copy of TBW's corrected disclosure is attached hereto as **Exhibit E**.

23. In the 2008 Applications, in Paragraph 38, TBW answered "no" to the following inquiries:

> During the past five years, has the Applicant or any predecessor in business or any of the past or present partners, Officers, Directors or employees been the subject of any investigation, reprimand, disciplinary action, criticism, or filed complaint by the FHA, VA, PMI carrier, any investor, authority or governmental agency?

24. In reliance upon, among other things, the truth, completeness and accuracy of the 2008 Applications and the information submitted in connection therewith, the 2008 Primary Bond Underwriters, severally, subscribed to and issued the 2008 Primary Bond to TBW on June 20, 2008. A true and correct copy of the 2008 Primary Bond is attached hereto as **Exhibit F**.

25. In reliance upon, among other things, the truth, completeness, and accuracy of the 2008 Applications and the information submitted in connection therewith, the 2008 Excess Bond Underwriters, severally, subscribed to and issued the 2008 Excess Bond to TBW. A true and correct copy of that 2008 Excess Bond is attached hereto as **Exhibit G**. The 2008 Excess Bond states that "[e]xcept as otherwise provided herein, this policy is subject to the same terms, exclusions, conditions and definitions as the policy of the primary insurers."

## NOTICE AND PRELIMINARY PROOF OF LOSS

26. Upon information and belief, Freddie Mac sent TBW a written demand dated August 14, 2009, alleging that

> TBW and certain of its directors, officers, employees, shareholders and/or affiliates (to be identified later as more information becomes available) are legally obligated to pay damages to Freddie Mac for its losses as a result of their wrongful acts, errors or omissions. Upon information and belief, these wrongful acts, errors or omissions include, but may not be limited to, the misappropriation of such money or collateral by a partner, sole proprietor or major shareholder of Taylor Bean, committed either alone or in collusion with others, through Taylor Bean's misuse, commingling and/or conversion of Freddie Mac custodial funds.

A true and correct copy of the August 14, 2009 notice is attached as **Exhibit H**.

27. On or about August 19, 2009, TBW provided to Underwriters notice of a potential claim under the 2008 Primary Bond and 2008 Excess Bond. TBW attached to the notice a copy of a demand letter from Freddie Mac and stated that:

> Though Freddie Mac's correspondence does not provide the factual detail for its claims, its claims include allegations of acts that would be covered under the bonds, including, without limitation, Insuring Clauses 1, 6, 9 and 12. Moreover, the general facts and circumstances alleged by Freddie Mac are reasonably likely to result in other claims and losses covered under the bonds.

A true and correct copy of TBW's August 19, 2009 notice is attached as **Exhibit I**.

28. On February 12, 2010, TBW submitted a preliminary proof of loss. A true and correct copy of TBW's preliminary proof of loss ("Proof of Loss") is attached as **Exhibit J**.

29. The Proof of Loss alleged that TBW was engaged in a "servicing reconciliation" and that "[w]hile this process is ongoing, TBW's current expectation is that, when completed, there will be material shortfalls between the amounts on deposit in the accounts and the amounts that should be on deposit for payment to Freddie Mac,

Ginnie Mae and other investors (many of whom are identified in Paragraph 1 of the "Loss Payable Rider" to the Primary Bond)."

30. The Proof of Loss alleged that TBW conducted an "Asset Reconciliation" on the Colonial Bank Purchase Line ("COLB"), the Colonial Assignment of Trade Line ("AOT"), and the Ocala Funding Commercial Paper Facility ("OFCP") and that "it is becoming increasingly clear that monies and mortgage assets were misused and, likely, misappropriated by TBW (including members of senior management) and others."

31. The Proof of Loss alleged a claim under Insuring Clause 1 on the theory that TBW "has suffered or will suffer direct financial losses by reason of and directly caused by dishonest acts of employees of TBW, whether committed alone or in collusion with others, which dishonest acts were committed by said employees with the manifest intent to obtain and resulted in the receipt of improper personal financial gain for said employees, or for the person(s) acting in collusion with said employees."

32. Among the allegations in support its claim under Insuring Clause 1, and in support of its claim that "employees" had received an "improper personal financial gain," TBW alleged:

    a. Lee Farkas, its former Chairman of the Board, "withdrew substantial sums of money from TBW for his personal benefit or for the benefit of business ventures that he owns and controls. The amounts of Mr. Farkas' withdrawals of funds from TBW are still being analyzed, but are believed to exceed $50 million."

b. Desiree Brown, its former Treasurer, "was paid $704,890.21 in 'bonuses' since January 1, 2006" and "received: (1) a transfer of $697,137.13 on or about June 11, 2008 purportedly for the purchase of a water-front real estate lot; (2) $49,435.00 on or about October 6, 2008 to pay for her child's education; and, (3) $66,500 for unknown purposes on July 27, 2009 (a little more than a week before TBW ceased operations)."

c. Delton De'Armas, its former Chief Financial Officer, "and one or more 'consulting firm(s)' he owned and/or controlled were paid substantial sums ($100,000 and $175,000, respectively) for 'successful' completion of the audit of TBW's FY 2008 financial statements."

33. On May 14, 2010, TBW submitted additional information in support of its claim under the 2008 Bonds, a true and correct copy of which is attached as **Exhibit K**. That submission alleges, among other things, that (1) Ocala Funding had a deficit collateral position from July 31, 2006 through November 2008; (2) inappropriate transfers from Ocala Funding's bank accounts began by January 3, 2008; and (3) Ocala Funding sent a report to Bank of America on April 30, 2008 misrepresenting the value of its loans.

34. The Proof of Loss also alleged a claim under Insuring Clause 6. In that regard, TBW alleged that

> Work done in connection with the Servicing Reconciliation and the Asset Reconciliation to date has revealed that at various points in time employees of TBW at the direction of Lee B. Farkas improperly transferred funds held in Custodial Accounts maintained by TBW on behalf of Freddie Mac and other investors and TBW and/or Farkas used such funds for other purposes. To date,

TBW has not been able to quantify definitively the total amount of funds transferred from Custodial Accounts or the losses incurred or to be incurred with respect to such transfers, but TBW believes the amount of funds improperly removed from Custodial Accounts exceeds $1 billion. Additionally, as set forth above, TBW believes that more than $2.5 billion in mortgage loans were improperly sold and/or pledged as collateral under the OFCP and the AOT.

35. Ginnie Mae and Sovereign Bank, although asserting a claim for loss allegedly covered by the 2008 Bonds and a right to pursue a claim thereunder, have not submitted a proof of loss to Underwriters.

36. Freddie Mac submitted a proof of loss alleging that it had a right to pursue a claim under the 2008 Bonds and had sustained a loss covered thereunder.

## COUNT I
## DECLARATORY JUDGMENT

37. Underwriters incorporate and reallege the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38. Florida Statute § 627.409. Representations in applications; warranties, provides in relevant part:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.
>
> (2) A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

39. The 2007 Applications and 2008 Applications contain misrepresentations and omissions of fact material to the risk TBW sought to insure.

40. Upon information and belief, the conduct alleged in the Proof of Loss began prior to the inception of the Bonds. For example, Underwriters are informed and believe that (a) at least one of the alleged transactions resulting in the alleged personal benefit to Lee Farkas occurred prior to the inception of the Bonds; and (b) the alleged misapplication of funds from Ocala Funding (as described in the Proof of Loss) occurred prior to the inception of some or all of the Bonds.

41. TBW alleges in its Proof of Loss that certain of the conduct supporting its claim under Insuring Clause 1 occurred on or before June 2008. For example, TBW alleges that it sustained a loss covered under Insuring Clause 1 because TBW transferred $697,137.13 for the benefit of Desiree Brown on or about June 11, 2008 purportedly for the purchase of a water-front real estate lot. Although the 2008 Applications asked TBW to disclose whether it had discovered any loss or received notice of any claim or potential claim involving employee dishonesty or had knowledge or information of any facts, circumstances or events which could give rise to a claim, TBW did not disclose this transaction in the 2008 Applications.

42. Although the 2007 Applications and 2008 Applications asked TBW to disclose whether it had discovered any loss or received notice of any claim or potential claim involving employee dishonesty or had knowledge or information of any facts, circumstances or events which could give rise to a claim, TBW did not disclose the conduct alleged in the Proof of Loss.

43. Although the 2007 Applications and 2008 Applications asked TBW to disclose any breaches of professional duty and/or any circumstances, incidents or situations which may result in claims against any past or present partners, Officers, Directors or employees of TBW, TBW did not disclose the conduct alleged in the Proof of Loss.

44. Although the 2008 Applications asked TBW to disclose whether it or any predecessor in business or any of the past or present partners, Officers, Directors or employees had been the subject of any investigation, reprimand, disciplinary action, criticism, or complaint by the FHA, VA, PMI carrier, any investor, authority or governmental agency, TBW did not disclose that, at the time of the 2008 Applications, it was the subject of a multi-state investigation that, upon information and belief, uncovered exceptions relating to TBW's underwriting standards, compliance and risk management practices, and internal control procedures and that led to a $9 million payment by TBW.

45. In November 2009, Deutsche Bank filed a civil action against Bank of America, alleging that it sustained a loss after Ocala Funding improperly transferred $3.7 billion to accounts that had no legitimate basis for receiving such funds. That complaint, which details transactions alleged in the proof of loss, alleges that the improper transfers commenced on or about June 30, 2008, and included transfers to accounts used to fund TBW's operations. TBW did not disclose those transactions in the 2008 Applications.

46. The conduct alleged in the Proof of Loss is material to the risks covered under the Bonds. Had Underwriters known about the conduct alleged in the Proof of Loss, they would not have issued the Bonds.

47. Pursuant to Florida Statute § 627.409, the Bonds are void *ab initio*.

48. This is a claim for a declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, 28 U.S.C. § 1332(a) and Florida Statute § 627.409.

49. Underwriters have satisfied all conditions precedent to bringing this action.

50. There is a *bona fide*, actual, present, and practical need for the declaration.

WHEREFORE, Underwriters respectfully request that this Honorable Court declare the Bonds null and void and declare that Underwriters owe no obligation thereunder, and for any other relief the Court deems appropriate.

## COUNT II
## DECLARATORY JUDGMENT

51. Underwriters incorporate and reallege the allegations contained in Paragraphs 1 through 36 and 38 through 50 as if fully set forth herein.

52. TBW's Proof of Loss alleges that that TBW, Freddie Mac and/or others sustained a loss covered under the 2008 Bonds.

53. Pleading in the alternative and without waiving the position that the Bonds are void *ab initio*, TBW is not entitled to recover under the 2008 Bonds unless it can prove a loss covered thereunder.

54. Insuring Clause 1 of the 2008 Primary Bond, in pertinent part, provides coverage for:

Direct financial loss sustained by the **Assured** subsequent to the Retroactive Date and discovered by the **Assured** during the **Bond Period** by reason of and directly caused by:

(a) Dishonest acts by any **Employee** of the **Assured**, whether committed alone or in collusion with others, which dishonest acts were committed by said **Employee** with the manifest intent to obtain and resulted in the receipt of **Improper Personal Financial Gain** for said **Employee**, or for the person(s) acting in collusion with said **Employee** . . .

55. Insuring Clause 6 of the 2008 Primary Bond provides, in pertinent part, coverage against:

Loss by reason of any claim first made against the Assured during the **Bond Period** by any **Secondary Market Institution** (hereinafter referred to as "Institution") for the direct financial loss sustained by such **Institution** as a the direct result of a **Theft** subsequent to the Retroactive Date by any partner, **Sole Proprietor or Major Shareholder** of the **Assured**, whether committed alone of in collusion with others including an **Employee**, of
(a) **Money** from a **Custodial Account** maintained for the **Institution** by the Assured which Money
  (i) was deposited with or paid to the Assured by said **Institution** for the purpose of purchasing a **Real Estate Loan** for said **Institution**, or
  (ii) was collected or received by the Assured for said **Institution** in connection with a **Real Estate Loan** which the assured is servicing for said Institution, or
(b) **Collateral** held for an Institution by the Assured in connection with a **Real Estate Loan** but which **Collateral** has been fraudulently pledged or sold to another person provided, however, that the Assured is held to be legally liable to said **Institution** for the loss of such **Money** or **Collateral**.

**Special Condition:**

It is agreed that as a condition precedent to coverage under this Insuring Clause that:
(a) the **Institution** shall require an annual audit by way of the Uniform Single Audit Program for Mortgage Bankers or otherwise of the **Custodial Account** by a firm of independent outside accountants and the Institution shall verify that said audit has been conducted, and
(b) the **Institution** shall require that at the earliest practical moment the **Assured** shall deliver the **Collateral** to either the Institution or a trustee nominated by the **Institution** or the Assured place upon said **Collateral**

> an appropriate designation of the **Institution's** interest in said **Collateral**.
>
> Failure by the Assured to comply with these requirements by an **Institution** shall not void the coverage under this Insuring Clause provided that the **Institution** has exercised due diligence by making every reasonable effort to verify that the Assured is complying with said requirements.

56. Upon information and belief, the conduct alleged in the Proof of Loss began prior to the inception of the Bonds and, thus, any claims relating thereto and/or emanating therefrom are not covered under the Bonds for two reasons. First, the 2008 Bonds exclude coverage for "any claim . . . arising out of or in connection with any circumstances or occurrences known to the Assured prior to the inception hereof, not disclosed to Underwriters at Inception." Second, the 2008 Bonds, pursuant to the 2008 Applications, do not cover any "claim or action subsequently emanating" from any "fact, circumstance or situation" known to TBW prior to the inception of the Bonds and not disclosed to Underwriters.

57. This is a claim for a declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, 28 U.S.C. § 1332(a) and Florida Statute § 627.409.

58. Underwriters have satisfied all conditions precedent to bringing this action.

59. There is a *bona fide*, actual, present, and practical need for the declaration.

WHEREFORE, Underwriters respectfully request that this Honorable Court declare whether any loss alleged in the Proof of Loss is covered under the 2008 Bonds, and for any other relief the Court deems necessary and appropriate.

# DEMAND FOR JURY TRIAL

Pursuant to Rule 9015(a), Federal Rules of Bankruptcy Procedure, made applicable through Rule 58, Federal Rules of Civil Procedure, the Underwriters hereby demand a trial by jury for all issues so triable.

Dated this  14th  day of May 2010.

        Respectfully submitted,

         /s/ Denise D. Dell-Powell
        Denise D. Dell-Powell, Esq.
        Florida Bar Number: 0890472
        **BURR & FORMAN LLP**
        450 S. Orange Avenue
        CNL Tower 1, Suite 200
        Orlando, Florida  32801
        Telephone:  (407) 244-0888
        Facsimile:  (407) 740-7063
        Email:  ddpowell@burr.com

        and

        Scott L. Schmookler, Esq.
        Randall I. Marmor, Esq.
        Clausen Miller, P.C.
        10 South LaSalle
        Chicago, IL 60603
        Telephone:  (312) 606-7845
        Facsimile:  (312) 606-7777

        **ATTORNEYS FOR THE UNDERWRITERS**